# Case No. 2,244.

## BUTLER v. THOMSON et al.

### [11 Blatchf. 533.][1]

Circuit Court, S. D. New York. March 27, 1874.[2]

SALES—STATUTE OF FRAUDS—MEMORANDUM BY BROKER.

A. employed a broker to sell for him a quantity of sheet iron to arrive from Russia. The broker offered it to B. verbally, at a price named, and B. verbally accepted it at that price. The broker then signed two papers, in the same words, as follows: "New York, July 10th, 1867. Sold by A. to B. 705 packs first quality Russia sheet iron, to arrive at New York, at 12¾ cents per pound, gold, cash, actual tare. Iron due about Sept. 1, '67. C., Broker." Below was a memorandum of the number of packs of each of eight different sizes, numbers or marks. One of these papers, so signed, was delivered by the broker to A., and one to B. This paper was the only written contract between the parties. A. sued B., alleging a refusal by B. to accept and pay for the iron, and a resale of it by A., at a loss, and claimed to recover such loss from B.: *Held*, that the paper signed by the broker was not a note or memorandum in writing, of the contract, subscribed as required by the statute

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reversed in Butler v. Thomson, 92 U. S. 412.]

[2] [11 Int. Rev. Rec. 30, gives "section."]

of New York (2 Rev. St. p. 136, § 3) in regard to contracts for the sale of goods.

[At law. Action by Benjamin F. Butler against Alexander A. Thomson and William Thomson to recover on a contract of sale. There was a judgment for defendant, and plaintiff moved for a new trial.]

Joseph H. Choate, for plaintiff.
Edward H. Owen, for defendants.

BLATCHFORD, District Judge. This suit was tried by the court without a jury, in February, 1869. It was brought in November, 1867. The declaration, which is in assumpsit, alleges that, on the 11th of July, 1867, the defendants, who did business as A. A. Thomson & Co., bargained for and bought of the plaintiff, who did business as Butler & Co., and the plaintiff bargained and sold to the defendants, 705 packs first quality of Russia sheet iron, to arrive at New York by ship or vessel, of certain sizes, marks or numbers, specifying them, at the rate or price of 12¾ cents per pound, payable in gold and for cash, actual tare, iron due about September 1st, 1867, to be paid for by the defendants to the plaintiff on its arrival as aforesaid, and then to be taken away within a reasonable time thereafter by the defendants; that, in consideration thereof, and that the plaintiff had undertaken to permit the defendants to take away the iron, on its arrival at New York, from the vessel having it on board, and to deliver it to them on the payment of the purchase money for it, the defendants undertook to accept the iron of and from the plaintiff, and to take it away, and to pay the purchase money therefor to the plaintiff; that, although the plaintiff, on or about the 28th of September, 1867, notified the defendants of the arrival of the iron at New York, and that the plaintiff was ready to permit the defendants to take away the iron from the vessel having it on board, and would have done so on the payment to the plaintiff of the purchase money therefor, and was ready to deliver the iron to the defendants as soon as it could be discharged from the vessel, yet the defendants refused to accept and pay for the same; and that thereafter the plaintiff resold the iron at a loss of 2¾ cents, gold, on its weight, 152,978 pounds, besides ¾ of one per cent. expenses of resale. The suit is brought to recover the amount of this loss. The defendants plead the general issue and a special plea setting up a failure by the plaintiff to carry out the contract on his part and to deliver the iron.

On the trial, it appeared that the plaintiff employed Messrs. White & Hazzard, a firm of metal brokers doing business in New York, to sell for him a large quantity of sheet iron, to arrive from Russia. The brokers offered it to the defendants, verbally, at a price named, and the defendants verbally accepted it at that price. The brokers then signed two papers, in the same words, as follows:

"New York, July 10th, 1867. Sold for Messrs. Butler & Co., Boston, to Messrs. A. A. Thomson & Co., New York, seven hundred and five (705) packs first quality Russia sheet iron, to arrive at New York, at twelve and three-quarters (12¾) cents per pound, gold, cash, actual tare. Iron due about Sept. 1, '67. White & Hazzard, Brokers." Below was a memorandum of the number of packs of each of eight different sizes, numbers or marks. One of these papers, so signed, was delivered by the brokers to the plaintiff and one to the defendants. This paper was the only written contract between the parties. The court held that the two papers did not constitute a written contract of purchase and sale, within the statute of frauds of the state of New York, and found for the defendants. The plaintiff now moves for a new trial.

The statute of New York (2 Rev. St. p. 136, § 3) is in these words: "Every contract for the sale of any goods, chattels or things in action, for the price of fifty dollars or more, shall be void, unless: (1.) A note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby; or, (2.) Unless the buyer shall accept and receive part of the goods, or the evidences, or some of them, of such things in action; or, (3.) Unless the buyer shall at the time pay some part of the purchase money." The 8th section of the same title provides, that "every instrument required by any of the provisions of this title to be subscribed by any party, may be subscribed by the lawful agent of such party."

As none of the iron was accepted and received by the defendants, and none of the purchase money of it was paid by the defendants, the sole question is, whether a note or memorandum in writing such as is required by the statute was made and subscribed, as required. If not, the contract for the sale was void. The paper in question is not signed by the defendants. It is signed "White & Hazzard, Brokers." It does not contain any words of purchase, nor does it contain the words "agree," or "agreement." The defendants are the party sought to be charged by the contract of purchase which is set up in the declaration. To charge them, the statute requires that a written note or memorandum of such contract of purchase shall have been made, and that such written note or memorandum shall have been subscribed by the defendants. The contract of purchase by the defendants is distinct from the contract of sale by the plaintiff. The plaintiff might very well have bound himself by a contract of sale, in writing, and subscribed as required, so as to have made himself liable thereon to the defendants, while the defendants did not bind themselves by a contract of purchase in writing, and subscribed as required, so as to have made themselves liable thereon to the plaintiff. Such contracts, binding one party to do a certain thing and leaving the other party

free, are not uncommon. Although the agreement of sale on the part of the plaintiff, and the consideration of such agreement, may be sufficiently stated in writing. in the paper in question, and it may be sufficiently subscribed by the plaintiff to give to the defendants a right of action against the plaintiff for a breach of such agreement of sale, it by no means follows that the plaintiff could successfully resist such action on the ground that he had no right of action, on the paper in question, against the defendants. This is the view of the court of appeals of New York, in Justice v. Lang, 42 N. Y. 493. The written instrument cannot be aided by the parol evidence that the defendants verbally accepted the offer made. If, moreover, it were even to be conceded that the defendants, in judgment of law, gave to the brokers authority to sign, on behalf of the defendants, a contract of purchase, no such contract was signed by the brokers. If the plaintiff himself had signed two papers, in the language of those signed by the brokers, and had delivered one of them to the defendants, and retained one himself, the paper would have contained only a contract by the plaintiff to sell, and would not have contained any contract by the defendants to purchase, on which this suit could have been maintained, against the objection now made. Nor would it have made any difference if the defendants, as well as the plaintiff, had signed the two papers. No contract to purchase could have been enforced against the defendants in the face of such objection. The case would not have been one of an agreement inter partes, subscribed by both of the contracting parties. The signature of the defendants could not convert into an agreement inter partes what was not such by its terms and on its face. Where both parties sign an agreement inter partes, a promise, or covenant, will be implied by one to do, or perform, that which is stated to be the consideration of the acts expressly undertaken by the other. A promise is not, under all circumstances, implied from the fact that a promise has been made by another party, to which that sought to be implied would be the correlative. and so the parties placed under mutual obligations to each other. In the present case, there was no transfer of property to the defendants. The written paper is, in form, unilateral, and contains no contract of purchase, enforceable against the objection made. It is, and ought to be, the policy of the courts not to relax further the principles which do not permit a written contract to be explained by parol testimony, instead of seeking to take out of the statute of frauds cases which are within its letter. Grant v. Naylor, 4 Cranch [8 U. S.] 224.

I do not regard the decision in the case of Salmon Falls Manuf'g Co. v. Goddard, 14 How. [55 U. S.] 446. as in conflict with these views. There the suit was against the purchaser, and the written memorandum was signed by the purchaser, and contained the word "purchasers." It results, that the motion for a new trial must be denied.

[NOTE. The plaintiff appealed from the judgment to the supreme court, which reversed the same, on the ground, that the expression of sale in the memorandum necessarily imported a purchase, and the contract, being signed by the agents of the buyer and the seller, was obligatory on both the parties thereto. Butler v. Thomson, 92 U. S. 412.]